(No. 14579.—Reversed and remanded.)

THE SPRINGFIELD DISTRICT COAL MINING COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*— (JOSEPH ARCHER, Defendant in Error.)

*Opinion filed June 21, 1922.*

1. WORKMEN'S COMPENSATION—*burden is on claimant to prove recurrence of disability.* In a proceeding under paragraph ( *h* ) of section 19 of the Compensation act the burden is on the claimant to prove that his disability was due to the accidental injury and that since the original award was made his disability has increased and recurred as a result of the injury.

2. SAME—*when an award for recurrence of disability cannot stand.* An award for a recurrence of the claimant's disability can not rest on conjecture or surmise, and if the evidence not only fails to sustain the award but tends to show that the employee's condition is due to other causes having no connection with the injury the award cannot stand.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

T. W. QUINLAN, for plaintiff in error.

KERR, MACDONALD & MURPHY, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This court allowed a writ of error to review a judgment of the circuit court of Sangamon county confirming an award made under paragraph ( *h* ) of section 19 of the Workmen's Compensation act. Joseph Archer, employed in the mine of plaintiff in error, was accidentally injured while engaged in his employment on September 9, 1919. He made application for an award of compensation, and on a hearing before an arbitrator April 5, 1920, he was awarded $12 per week for 26 weeks for temporary total incapacity and $4 per week for 52 weeks for partial incapacity. On March 19, 1921, he filed a petition under

paragraph (*h*) of section 19 claiming his injury had subsequently increased and recurred. A hearing on review of the award was had before the Industrial Commission on July 30, 1921, and on August 10 the commission filed its decision that Archer's disability had recurred and increased and awarded him $4 per week for 338 weeks, beginning at the expiration of the period when the former award ceased. The record was removed by plaintiff in error to the circuit court by writ of *certiorari,* and that court confirmed the award of the commission.

It is contended by plaintiff in error that there was no evidence to sustain the award. Archer at the time of his accidental injury was wedging coal. The wedge flew out and hit him in the privates. He testified before the arbitrator, on the hearing of the application for the original award, that Dr. Wilbur visited him the night following the accident. He would swell up, and the swelling would go down again, two or three times a day. He was in bed three weeks and returned to work March 16, 1920, but could not stand it. Before he was hurt he loaded three or four cars a day and since the accident could load only one. He was pretty sore where injured. He worked three days in succession and had to quit. When he stooped to lift anything he had difficulty in straightening up again. He was sixty years old and had worked 139 days of the 180 days the mine worked, before his accident. He was off on account of sickness at different times, amounting to two months. He was not sick that long at any one time. The first time he laid off on account of sickness he could not make water. That was over a year prior to the hearing before the arbitrator. He went to Dr. McMahon for treatment. He testified he got down with his back,—"right across the small of the back, in the kidneys." He went to Dr. McMahon for treatment for that trouble and got all right and went back to work. That was all the testimony in his behalf heard by the arbitrator

Dr. Henkel, a witness for plaintiff in error, testified he is a specialist in urology and kidney diseases. He treated Archer from December to March. He was suffering with pain in the right scrotum and difficulty in making water. He said he had been troubled for the last year in passing water, and that it caused him pain in his back at the time of passage, which the doctor called "referred pain." The doctor testified he ascribed Archer's condition to the condition of his prostate. The last time he saw him he was suffering as a result of an injury to the scrotum, plus his prostate condition. The pain was confined to the right scrotal sac, and some pain in the canal and general weakness. The condition of the prostate would have more to do with pain in passing water than the scrotal injury. There was no stricture or any laceration. There was no connection between the pain Archer complained of when he lifted, and the injury. He attributed the pain to the enlargement of the prostate gland, common in men of his age, and not the result of the injury. The prostate was not enlarged but was hard and fibrous and contracted along and narrowed the canal.

On the hearing of the petition claiming his disability had recurred and increased, Archer testified he went back to work after the hearing before the arbitrator and loaded an average of two cars a day. He worked three or four months and then quit because he could not work any more. He had pain when he shoveled or lifted. His privates swelled when he worked, but they were not swelling at the time of the hearing. He was swelling in the groin and wore a truss. The chief trouble was in his groin.

Dr. Herndon, on behalf of plaintiff in error, testified that on July 30, 1921, at the request of the insurance company he made a complete physical examination of Archer from head to foot. He found the abdominal wall thin and both inguinal rings relaxed. There was an enlargement of his prostate, but no sign of injury to the scrotum and no

evidence of previous injury. The condition of the inguinal rings could not have been caused by the accident. He complained of pain on both sides,—more up in the groin than the scrotum. The prostate condition would not be caused by the injury to the scrotum. The doctor was of opinion he had an incipient hernia.

It will be seen the evidence consisted entirely of Archer's testimony in his own behalf and that of two physicians called to testify by plaintiff in error. While the record very properly contains the testimony heard on the application for the original award, the correctness of that award is not here involved. We are concerned only with the award made on review under the petition of Archer claiming the injury had recurred and increased. The burden of proof was on Archer to establish that his disability was due to the accidental injury, and that since the original award was made his disability had increased and recurred as a result of his accidental injury. We have above set out the substance of all the testimony and need not repeat it in discussion. There clearly was, at most, but very slight evidence that Archer's condition at the time of the hearing on review, which was after the amendment of 1921 went into effect, was in any degree caused by the injury he sustained in the mine in September, 1919. His own testimony is inconclusive and indefinite, and the medical testimony does not furnish support for the award, but, on the contrary, tends to show Archer's condition was due to other causes than accidental injury. Considering the whole testimony, it can not even be said the disability was equally consistent with the accidental injury or with other causes having no connection with the injury. We have held before the amendment of 1921 authorizing circuit courts to review the facts, that the award must be based on facts proved and cannot rest on conjecture or surmise. *St. Louis Smelting Co.* v. *Industrial Com.* 298 Ill. *272; Edelweiss Gardens* v. *Indus-*

*trial Com.* 290 id. 459; *Peterson & Co.* v. *Industrial Board,* 281 id. 326.

Because the evidence was insufficient to support the award the judgment of the circuit court is reversed, the award of the Industrial Commission set aside, and the cause is remanded for further hearing by the commission if further testimony is desired by the party interested.

*Reversed and remanded.*