THE FRANKLIN COUNTY MINING COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*— (ENOCH STANIVICH, Defendant in Error.)

*Opinion filed October 28, 1926.*

1. WORKMEN'S COMPENSATION—*what question, only, may be considered on review under paragraph (h) of section 19 of Compensation act.* The only question for consideration of the Industrial Commission on a hearing of a petition for review under paragraph (*h*) of section 19 of the Compensation act is the question of fact as to whether the disability has recurred or increased, diminished or ended, and the extent of the disability at the time the original award or agreement was made cannot be inquired into.

2. SAME—*petitioner must prove recurrence or increase of disability.* The burden is on the petitioner, under paragraph (*h*) of section 19 of the Compensation act, to prove a recurrence or increase of the disability since the original award or agreement.

3. SAME—*what is sufficient proof of recurrence or increase of disability—award.* Where the original agreement for compensation is made on the basis of the report of a physician that the employee is partially incapacitated and that "there will possibly be a little permanent disability for real heavy types of work," a finding of recurrence or increase of disability on review under paragraph (*h*) of section 19 of the Compensation act is justified where

the weight of the evidence tends to show that the employee, at the time of the review, is totally incapacitated for physical labor and that his condition is permanent, and an award of weekly payments followed by a pension for life for the full amount fixed by statute may be entered, allowing the employer credit for the amount paid in accordance with the agreement.

4. SAME—*commission should fix date of recurrence of disability—amendment.* The Industrial Commission finding that a disability has recurred or increased under paragraph (*h*) of section 19 of the Compensation act should fix a date of the recurrence of the disability, but on review the circuit court, without remanding the cause, may correct the omission where there are sufficient facts before it to justify a finding when the recurrence commenced; and where the disability is complete and permanent but the Industrial Commission does not definitely fix the time for weekly payments to begin the circuit court may amend the order fixing a time for the beginning of such payments, crediting the employer, weekly, with the amount originally paid for the disability.

WRIT OF ERROR to the Circuit Court of Franklin county; the Hon. C. H. MILLER, Judge, presiding.

WILLIAM H. HART, and WILLIAM W. HART, (SAMUEL A. HARPER, of counsel,) for plaintiff in error.

A. W. KERR, and A. C. LEWIS, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Enoch Stanivich, an employee of the Franklin County Mining Company, on May 18, 1921, while at work loading coal in the mine of his employer, received an injury by a fall of rock from the roof. He was paid temporary compensation from the time of the injury, amounting to $970.20. On December 15, 1922, he filed with the Industrial Commission an application for the adjustment of his claim for compensation, and on May 17, 1923, a lump sum settlement of the claim was made for $2000 in addition to the $970.20 already received. This settlement was approved by the Industrial Commission and the petition dis-

missed. The terms of the settlement were stated as follows: "Respondent to pay .applicant $2000 lump sum partial permanent disability. Dr. J. B. Moore, the attending physician, was of the opinion applicant was able to do some light work on September 11, 1922. This settlement is based upon the agreement of the parties hereto and also upon the report of Dr. J. B. Moore, which said report is dated September 11, 1922, and a true and correct copy of said report is attached hereto and is hereby expressly referred to and made a part of this settlement contract." It was further provided that the claim might be reviewed by the Industrial Commission upon petition of either party, as provided by paragraph (*h*) of section 19 of the Workmen's Compensation act.

The report of Dr. Moore attached to and made a part of the settlement contract was made to the company on September 11, 1922, and was as follows: "Enoch Stanivich, who was injured on March 18, 1921, has been examined repeatedly and under my care since that date, was examined again on September 11, 1922, in connection with X-ray plates. The back bends practically normal in stooping. There is a slight prominence of the transverse process of the twelfth dorsal. There is no muscle spasm. The back muscles are well developed. His general condition is very good. Weight 176 pounds, shirt off. I think that this man is able to release for work. There will possibly be a little permanent disability for real heavy types of work."

On October 10, 1924, Stanivich filed with the Industrial Commission a petition under paragraph (*h*) of section 19 of the Workmen's Compensation act, alleging that since the date of the settlement contract his disability had recurred and claiming additional compensation. On July 2, 1925, the commission, on consideration of the cause, found that the disability of the petitioner had recurred and increased and that as a result of the injury the petitioner was now wholly and permanently incapacitated from work, and it was there-

fore ordered that the company pay him $12 a week com-
pensation for 291 weeks and one week at $8 and thereafter
a pension for life of $23.33 a month, and that it have credit
for all compensation theretofore paid on account of the
injury.   A writ of *certiorari* was sued out of the circuit
court, which found that the decision of the Industrial Com-
mission is in accordance with the evidence and the law, ex-
cept that the commission should have found the date of the
recurrence and increase of disability, and that such date was
the 23d day of July, 1924.   It was therefore ordered that
the motion of the petitioner to quash the record be denied
and the motion of the respondent to quash the writ be
granted; that the decision of the Industrial Commission
be revised and reformed by adding thereto as the date of
recurrence, after the word "increased," in the third line of
the second paragraph thereof, the words "on the 23d day
of July, 1924," and by adding after the fourth paragraph
of said decision, "that the additional payments ordered by
this decision commence on the 23d day of July, 1924, or
on the date thereafter to which the amount for which the
respondent is herein given credit pays the petitioner when
computed at the rate of $12 per week, and that the time
for which compensation is ordered paid at the rate of $12
per week be computed from the date of the accident."   It
was further ordered that as so amended and reformed the
decision of the Industrial Commission be affirmed.

The order approving the lump sum settlement was based
upon the agreement of the parties, including the report of
Dr. Moore that the applicant was able to release for work,
that his back bent practically normal in stooping, that there
was a slight prominence of the transverse process of the
twelfth dorsal and no muscle spasm, and there would pos-
sibly be a little permanent disability for real heavy types
of work.   The basis of the approval of the settlement was
therefore the ability of the defendant to do some work, with
possibly a slight permanent disability for heavy work.   Par-

agraph (*h*) of section 19 of the Workmen's Compensation act provides that an agreement or award providing for compensation may be reviewed at any time within eighteen months, at the request of either party, on the ground that the disability of the employee has subsequently recurred, increased, diminished or ended, and on such review compensation payments may be re-established, increased, diminished or ended. On the hearing of the petition in this case the extent of the disability at the time the award or agreement was made cannot be inquired into. That question was determined by the settlement and the order of the commission which approved it, and the only question for the consideration of the commission on the hearing of the petition was whether Stanivich's disability had recurred and increased since this settlement. (*Summit Coal Co.* v. *Industrial Com.* 308 Ill. 121; *Valier Coal Co.* v. *Industrial Com.* 319 id. 99.) This was a question of fact and not of law. (*Western Foundry Co.* v. *Industrial Com.* 298 Ill. 593.) The burden of proving a recurrence or increase of disability was on the petitioner. (*Springfield Coal Co.* v. *Industrial Com.* 303 Ill. 312.) If the evidence shows he is now totally incapacitated for physical labor his disability has necessarily increased since the settlement, when he was able to release for work with a slight permanent disability for heavy work.

Stanivich was a strong young man, twenty-two years old. A ton and a half of rock fell from the roof of the mine, striking him on the head and doubling him backward. He was taken to the hospital, where he remained twenty-two weeks under the care of Dr. Moore, the company physician, who continued to treat him regularly until the settlement. The injury caused was a crushing fracture of the body of the twelfth dorsal vertebra. Stanivich testified that his back pained him a lot more now than when he made the settlement and pained him all the time. When he walked and when he went up steps it pained him and he could not walk fast on account of the pain. He did not

have complete control of his legs.   Sometimes when he got up in the morning he was nervous and could not stand up. When he bent over his back hurt him.   He felt as if something was run into him.   He had sharp pains when he bent over.   Before the injury he could lift two hundred pounds or more but when he testified he could not lift any weight. About ten pounds was the limit.   He tried to work in a grocery store but could not stand it, and at the time he testified he was going to school, taking a business course.   He had finished the eighth grade in the public schools.   He also tried to work in the house, washing dishes, and was unable to do it on account of the sharp pains in his back when he was standing and also when he was sitting.   He was in constant pain and did not know any kind of work he could do, and he had to use a cane in walking.

Dr. Turner, of Christopher, Illinois, who examined Stanivich on January 10, 1923, about four months before the settlement and about four months after Dr. Moore's report was made, testified that Stanivich was 5 feet 7¼ inches tall and weighed 180 pounds, stripped.   There was a spinal curvature to the left side which was not caused by the present injury.   He made a second examination on July 23, 1924.   Stanivich then weighed 192 pounds, stripped. The only difference was, the muscle spasm in the upper left lumbar region had increased and there was an increase in the patellar reflexes, which indicated an irritability of the nerves going into the intervertebral foramen and that the nervous system was beginning to be affected.   The increase of muscle spasm was the result of increase of weight, more strength and tension being required than previously to support the spine in an upright position.   There was some kyphosis,—that is, angular curvature of the spine, a humpbacked condition,—and more prominence of the twelfth spinal process.   Dr. Turner made a third examination on January 9, 1925.   The X-ray showed an exudate had been thrown out, and the eleventh and twelfth dorsal and first

lumbar vertebræ had been sealed and compressed into one solid union.   There was an increase in the tendon reflex, which indicated an increased excitability of the nerves, and the back movement was very much restricted in all directions.   Dr. Turner had had experience with similar injuries, and in his judgment Stanivich was unable to do any physical labor whatever and his condition was permanent.

Dr. Nathaniel Adams, of Chicago, a physician and surgeon of twenty-nine years' experience, who had frequent occasion to examine and treat men with injured backs, testified that he made a physical examination of Stanivich in his office on November 11, 1924, as well as an examination of the X-ray plates about which Dr. Turner testified and which were in evidence.   He testified that the plates show a compression fracture, and that the front part of the body of the twelfth dorsal vertebra is compressed until it is not more than one-fourth as wide as the bodies of the adjacent vertebræ.   There is a malposition, produced by the lessening of the pad of cartilage between the body of the eleventh dorsal and the twelfth dorsal vertebræ and between the twelfth dorsal and the first lumbar vertebræ.   There has been some smoothing out of the original callus.   The knuckles can be plainly seen and felt where the spinous process of the twelfth dorsal vertebra sticks out backwards, and in the movements of the spine the twelfth dorsal and the first lumbar act as one bone.   They have been welded together.   There is motion in the lumbar spine below this point.   The motion is carried out carefully, but Stanivich has motion sufficient to lean over and bring his finger tips to within about eight inches of the floor.   He can also bend backward to about the normal range, except the movements of the injured vertebra.   The lateral motion is fair and he can twist his body.   There is a little muscle spasm, but not to a marked degree, to the right of the spine, at the bodies of the twelfth dorsal and first lumbar vertebræ. The increase in weight is a detriment to him, because he

has more weight to carry with his injured back. When the injury first occurred there was some exudate thrown out, due to irritation at the side of the injured vertebra. This was smoothed off considerably and the vertebræ come closer together, and the circulation at the point of the crushed vertebra is necessarily impaired, and it is reduced in size for that reason. The smoothing out has caused increased pressure on the nerves. There is some tenderness in one spot continuously, which does not vary. This is a subjective symptom. Dr. Adams had had occasion to see other men with similar injuries. In his judgment Stanivich was not fit for manual labor and his condition was permanent. Dr. Adams further testified that he had not known of a man being able to go back to physical labor with an injury of the severity of that of Stanivich. He was injured in a spot which is extremely dangerous and is really a vital spot, with a lot of nerves running down to the legs from that spot and the nerves controlling the bowel movement and the bladder, and Dr. Adams was surprised that Stanivich did not have bladder trouble.

Dr. Gilmore, of Benton, testified in regard to the X-ray plates showing constant increase in the density of bone formation until September 22, 1922. The last plate, taken October 22, 1924, shows a smoothing out of the callus.

Dr. J. B. Moore, of Benton, testified to his treatment of Stanivich following the accident until the settlement in May, 1923, and to his seeing him last on October 22, 1924, at which time he made a physical examination of him and had access to the X-ray plates which were testified to. He stated that at that time Stanivich was well nourished, apparently in very good health, strongly built and weighed 183 pounds, stripped. He was able to bring the tips of his fingers to within about eight inches of the floor repeatedly. There was uniformity of flexion, and very good flexion of the lower lumbar back up to probably the first or second lumbar. The lateral flexions were good. There

was no spasm of muscles secondary to these bending exercises. All of his reflexes were equal on either side. There was no atrophy and the knee reflexes were equal and alert. His condition had gradually improved from the time of the injury. On cross-examination he testified that Stanivich has a back which is able to sustain the weight of a normal back; that his back is as good as if it had never been injured, and he ought to be able to do the same amount of work he ever could if he worked awhile. Dr. Moore could not say whether he suffered pain as a result of the injury. He had bodily weakness during the period of rest. It was the doctor's opinion that the process of repair would make his back about as strong as it was before the injury. The only inconvenience he had at the time was from being off from work so long. The body of the twelfth dorsal vertebra was crushed and the three vertebræ are now linked together into one. There is no evidence of pressure on the nerves and there is nothing that could be recognized that would cause pressure on the nerves.

There is a difference of opinion among the physicians as to Stanivich's capacity for hard work. The injury was severe and serious. The preponderance of the evidence is that Stanivich will never be able to engage in hard manual labor and that he is now practically unable to work. The settlement was based upon the condition that he was at the time able to go to work and there would possibly be a little permanent disability for heavy work. Dr. Turner testified that in his judgment Stanivich is absolutely unable to do any physical work whatever and that the condition is permanent, and Dr. Adams that in his judgment Stanivich is not fit for manual work and his condition is permanent. If this is the condition now, the disability is greater than that which was the basis of the settlement. By the settlement it was determined that Stanivich was capable of work, though he had a little permanent disability for really heavy work. That does not describe his condition now. Accord-

ing to the evidence he is practically incapable of physical labor. There was evidence tending to support the petitioner's claim that his disability had recurred and increased,—that he was unable to engage in physical labor to any extent,—and we cannot say that the finding of the commission is manifestly against the weight of the evidence.

The commission should have found the date of the recurrence of the disability. It did not do so. The evidence showed the condition of the petitioner at various dates, a gradual increase of his disability, which at the examination on July 23, 1924, had become total. The evidence sufficiently showed that fact to justify a finding that at that time there was a recurrence of the disability occasioned by the injury, and the commission should have so found. The evidence in the record furnished a basis on which the circuit court might correct the omission to fix the time for the commencement of payments under its order, and it was not necessary to remand the cause to the commission to make the finding of fact which the evidence required. *Valier Coal Co.* v. *Industrial Com. supra; Snyder* v. *Industrial Com.* 297 Ill. 175; *Centralia Coal Co.* v. *Industrial Com.* 294 id. 325.

The order of the commission fixing the compensation at the rate of $12 per week for a period of 291 weeks and $8 additional fixed no time when the payments under the order should begin, though it directed that the respondent should have credit for all compensation theretofore paid. The court corrected this omission by adding to the decision the words, "that the additional payments ordered by this decision commence on the 23d day of July, 1924, or on the date thereafter to which the amount for which the respondent is herein given credit pays the petitioner when computed at the rate of $12 per week, and that the time for which compensation is ordered paid at the rate of $12 per week be computed from the date of the accident." It is objected to this amendment of the order that there is no author-

ity for compensation payments to begin at an alternative period. While in form the time of commencement of the additional payments is stated in the alternative, there is no alternative. The effect of the order is to direct credit of the sum of $2970.20 to be given weekly, commencing with May 18, 1921, the date of the accident, and after the time of such credit has expired payment to be made at the rate of $12 a week until the total period of 291 weeks has expired and a payment of $8 at the expiration of the 292d week from May 18, 1921, at which time the payments would begin and to be paid monthly thereafter during Stanivich's lifetime.

The objection is made that the order that payments be computed from the date of the accident is not justified under the law, because when the payment was approved it was binding on both parties, and no further compensation was due the petitioner until he proved a recurrence and increase of his disability, as provided by the statute, and that after May 17, 1923, there was a period of time during which the disability of the petitioner was the same as on that date, and during this period the company could not be required to pay compensation, since payments can only be re-established from the date of the recurrence. The lump sum settlement did not purport to pay the compensation at the rate fixed by the statute for any time. There was simply an agreement of a fixed amount of total compensation based upon an agreed state of facts. It would have settled the rights of the parties permanently except for the provision of the statute which provided that it could be reviewed and compensation payments be re-established, increased, diminished or ended. When it is reviewed and the disability, which was partial at the time of the settlement, is found to be total, the law fixes the amount which the employer should pay for such total disability. The lump sum payment was not based upon weekly payments. The one payment satisfied the whole amount of the compensa-

tion. When it was afterwards found that the disability had increased and had become total, an award which charged the employer with no more than the amount of the compensation fixed by the statute for such total disability and gave it credit for the total amount paid on account of disability was authorized by law.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*