LOUIS BIKER, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(THE FRANKLIN COAL AND COKE COMPANY, Plaintiff in Error.)

*Opinion filed February 24, 1928.*

1. WORKMEN'S COMPENSATION—*what may be considered in determining whether disability has recurred or increased.* In determining in a proceeding under paragraph (*h*) of section 19 of the Compensation act whether an employee's disability has so recurred or increased as to render him permanently incapacitated to earn wages, the evidence at the original hearing, the claim made therein and the finding of the commission should be considered, as well as the evidence on the hearing of the petition for review.

2. SAME—*when the disability is shown to have recurred or increased.* In a proceeding under paragraph (*h*) of section 19 of the Compensation act, the employee's disability is necessarily shown to have recurred and increased where the evidence shows that he is permanently injured and so incapacitated for work as to be unable to earn wages, while the evidence in the original proceeding for compensation, and the finding of the arbitrator and the commission based thereon, established that the disability was of a temporary character.

3. SAME—*date of recurrence of disability need not be fixed definitely.* The fact that the court finds that an employee's disability recurred on a certain date while the evidence does not show precisely the date the disability recurred is not fatal to the judgment, where the record shows that the employee was injured in his back by a strain, that the disability was at first temporary but that subsequent developments caused the injury to become permanent and to result in total incapacity to earn wages, as it is immaterial, in such case, at just what date the disability began to increase.

WRIT OF ERROR to the Circuit Court of Franklin county; the Hon. CHARLES H. MILLER, Judge, presiding.

WALTER W. WILLIAMS, and THURLOW G. LEWIS, for plaintiff in error.

WILLIAM W. HART, (COBBS, LOGAN & ALEXANDER, of counsel,) for defendant in error.

Mr. Justice Duncan delivered the opinion of the court:

On September 11, 1922, defendant in error, Louis Biker, filed an application for adjustment of claim with the Industrial Commission, alleging that on March 4, 1922, he received an accidental injury arising out of and in the course of his employment by plaintiff in error, the Franklin Coal and Coke Company. He alleged that he wrenched his back by pushing an empty coal car into his room, and claimed (*a*) $200 on account of medical care and attention; (*b*) $17 per week for 50 weeks for temporary total disability; (*c*) $1000 for serious and permanent disfigurement to head, face and hands; and (*d*) $17 per week for 50 weeks for partial disability. It was stipulated before the arbitrator that the parties were operating under and subject to the provisions of the Workmen's Compensation act; that on said date defendant in error received an accidental injury which arose out of and in the course of his employment; that plaintiff in error had notice of the accidental injury within thirty days; that demand for compensation was made within six months; that his annual earnings were $1456 and his average weekly wage $28; that he is a married man and has five children under the age of sixteen years; that first aid, medical and hospital services were furnished him, and that he had been paid compensation in the sum of $165.10. The arbitrator awarded him $17 per week for a period of 9-5/7 weeks for temporary total incapacity for work. Defendant in error filed a petition for review of the decision of the arbitrator, and on May 11, 1923, on the same evidence, the Industrial Commission approved and confirmed the award. Thereafter, on November 10, 1924, defendant in error filed a petition under paragraph (*h*) of section 19 of the Workmen's Compensation act, alleging that the award should be reviewed because subsequent to the date thereof his disability had recurred and increased, and that $165.14, the full amount of the former

award, had been paid. On the hearing of the latter petition, on January 23, 1925, the transcript of the original evidence heard before the arbitrator and additional testimony of defendant in error and of one physician was considered, and the Industrial Commission found that the disability had not recurred or increased and denied the prayer of the petition. A writ of *certiorari* was sued out of the circuit court of Franklin county, and that court on February 13, 1926, reversed the decision of the commission and entered judgment against plaintiff in error that it pay defendant in error $17 per week for 250 weeks from May 17, 1924, and thereafter a pension for life of $28.33⅓ per month, after finding the injury had recurred and increased and rendered defendant in error wholly and permanently incapacitated for work. It was further ordered that plaintiff in error be credited with the compensation theretofore paid. The Franklin Coal and Coke Company has been allowed a writ of error to review the record.

In addition to the stipulated facts the evidence heard before the arbitrator as to the original award is in substance the following: Defendant in error, through an interpreter, testified January 4, 1923, that he was thirty-seven years old and had been employed for the past twelve years as a miner for plaintiff in error and had never received an injury prior to the one of which he then complained. He received an injury to his chest and back on March 4, 1922, by pushing a coal car up a hill into his room with his right shoulder. He went to Dr. Blakemore, the company's physician, and was treated by him for two months at his office. He also went to Dr. Moore for treatment and to two other physicians in the months of April, June and October, 1922. He described his injuries as a hurting in his chest, which prevented him from sleeping well at night. When he tried to lift anything he had pain in "the small of his back" and right chest. His chest and back never hurt him before he was injured. He had improved a little from his injuries

but had not been able to do any mine work. He had carried a little water for the folks at home.

The following witnesses testified for plaintiff in error:

Dr. Joseph H. Blakemore testified that he was employed by plaintiff in error to treat its employees for accidental injuries. On March 4, 1922, Louis Biker came to his office and complained of pain in the lumbar region of his back. He made an examination of him without any objective findings. He treated him up until March 22, 1922, at which time he discharged him as cured. He was then complaining of pain in his chest, arms and shoulders. He has since, in March or April, 1922, examined his heart and lungs and found no objective symptoms present. His heart, lungs and abdominal organs were all normal. He examined him for bronchitis and found no rales. He found no symptoms of lumbago or of bronchitis.

Dr. W. H. Gilmore testified that he is a physician and surgeon, specializing in X-ray work. He made an X-ray examination of the applicant on March 16, 1922. Stereoscopic films made of the lumbar spine in an anterior posterior position show no bone pathology.

Dr. J. B. Moore, of Benton, testified that he examined Biker on March 16 and May 4, 1922, respectively. On March 16, 1922, his general appearance was good. His height was five feet, nine inches. His weight, stripped, was 138 pounds. He found nothing of importance in his head or neck, or in his arms, hands or shoulders. His chest was regular; fine and dry rales in the bases and the auxiliary regions of both sides. Aside from that there was nothing of importance in the chest. He stood erect and his weight was borne equally on both feet. There was no tilting in the pelvis. The lumbar curve was decreased. There was a possible, but not positive, increased tenseness of the left lumbar muscle in the upright position. There was no fixation of any portion of the spine in stooping. There was nothing of importance in his abdomen or feet or legs. The

only evidence of injury that he found was a possible increased tenseness of the left lumbar muscle, but he could not determine positively that this tenseness was real. He found no evidence of an injury to the chest. On cross-examination he stated that on May 4 his examination was devoted entirely to the chest, that being the complaint which Biker made. He then had a chronic bronchitis, and findings that might be secondary to influenza or grippe. There were no areas of consolidation or moist rales that would indicate an active process in the lung tissue itself.

On the hearing of the second petition defendant in error testified before the commission on January 13, 1925, that the only mine work he had attempted to do since he was before the arbitrator in January, 1923, was in October, 1923, when he tried for four days to load coal in his room. He was then only able to throw a few shovelfuls of coal on account of his back. He was not able to do any lifting. With a rope he tried to draw water from his well at home, using a gallon and a half bucket in which to carry it, and tried to carry kindling, but could not do either because he was not able to stoop and lift without hurting his back. His back is sore on the left side, and in bending or stooping he has to do it slowly, and it is painful then. Walking causes his back to hurt. Since the hearing before the arbitrator he has been confined to his bed four times on account of his back, which hurts him all the time. At one time he was in bed for nearly a month. His physician, Dr. Tweedy, gave him medicine when he was in bed. There is no work in the mine that he can do. He cannot write or read the English language and never had any schooling in his own language, except a half year. He does not know of any clerical work that he can do. The left side of his back gets worse as time goes on.

Dr. Rudolph Hoffmeister, of St. Louis, Missouri, testified for defendant in error that he made physical and X-ray examinations of defendant in error in May, July and

October, 1924. The X-ray was an anterior posterior view of his spine from the last thoracic vertebra down to and including the major portion of the hip bones, which showed an advanced ankylosis between the last thoracic and first lumbar region, with arthritic changes involving particularly the transverse process on the left side, in the second and third lumbar vertebræ. There was a slight torsion of the fourth lumbar vertebra, which was indicated by the apparent absence of the transverse process on that vertebra. The pathology is confined mainly to the upper lumbar vertebra and the last thoracic vertebra. He does not think his condition described is congenital. His physical examinations showed a stiff back or rigid spine. He could execute the various movements of the trunk, the flexion and extension, but the ankylosis in the spine was evident. The motion was from the hips down. The lateral flexion and rotation of the trunk were very limited. He complained of pain and all of his movements were performed gradually and very slowly. He had a very rigid back. The erector spinae muscles were prominent, and he was particularly tender along those muscles and on the lower ribs on his left side, which the witness assumed was due to ankylosis and arthritic changes in the spine. He could not induce Biker to stoop forward and touch the floor without bending his knees, or to lift objects. He seemed to be somewhat nervous. He found no organic trouble of any kind. Such conditions of the spine that he has described usually come on slowly. On the assumption of facts that on March 4, 1922, the man had up to that time been working in coal mines for about twelve years without trouble or inconvenience; that on that day he was pushing a coal car weighing several tons, straining with his shoulders and arms against the car, and felt a sudden pain in his back so severe as to cause him to quit work; that since then he has not worked in the mines but has tried on four different days, lifting only a few shovelfuls of coal; that he complained of pain

in the back and on several occasions had to go to bed as much as a week and once for a month because of the condition of his back; that he is unable to walk far without suffering pain and having to stop and rest; that he is unable to stoop to the floor without bending his knees and having pain; that his muscles are found to be taut and rigid and that the other conditions described by the witness exist,—the doctor answered that his judgment was that the conditions were caused by a sprained back, and that injury to the muscles and ligaments in the back due to straining are frequently followed by arthritic changes. He also testified that the conditions aforesaid are permanent and disabling for any work involving bending or lifting, and that he does not think the man could do any physical labor involving bending or lifting. On cross-examination he stated that he had been connected with the Alexian Brothers' Hospital since 1918 and had been on the surgical staff there since 1920. He has been treating cases of traumatic injury since he has been practicing medicine, on an average of about two a day. He has had experience in reading X-ray pictures during that entire time. By "the apparent absence of the transverse process" on the fourth lumbar vertebra he meant that it was obscured by the rotation of that vertebra, caused by muscle pull, which is the usual cause for rotation. That process is probably not gone but simply obscured by the rotation of the vertebra. He then called attention to the X-ray picture and referred to the facts that the other transverse processes were visible and the one on the fourth vertebra was not visible. On the further assumption of facts by the cross-examiner that the man had been engaged for twelve years loading coal in the mines and on March 4, 1922, left the mine complaining of having sustained a strain to his back by pushing an unloaded mine car; that he was immediately examined by a physician and surgeon, who found no objective symptoms of injury and treated this man for about sixty days and discharged him

as cured, with all the internal organs normal and with no symptoms objectively of injury; that an X-ray examination of him was made on March 16, 1922, which was negative, and that he had not worked from that time up to October 19, 1923, at which time during a period of four days he loaded three shovelfuls of coal,—the doctor answered that if those facts were true it would not be his opinion that his condition was caused by trauma. He further stated that his condition could be caused by rheumatic or focal conditions and also by trauma, and indicated that the real cause would have to be determined by the true history of the conditions and a consideration of the time of the injury, if any, and the relation of the injury with reference to the time the conditions aforesaid began developing.

The former award of the arbitrator confirmed by the commission was a final adjudication of all matters in dispute at that time. The sole questions now before us on the second petition are (1) whether or not the injury has recurred and increased since the first award was made; and (2) if the injury has recurred and increased since that time, is defendant in error shown by the evidence to be permanently injured and so incapacitated for work that he is unable to earn wages thereby? In determining these questions the evidence at the original hearing and the evidence on the second petition should be considered, as well as the claim made by the injured party in his original petition and the finding of the commission under the petition. *Slogo Coal Co.* v. *Industrial Com.* 307 Ill. 41; *Summit Coal Co.* v. *Industrial Com.* 308 id. 121; *Belleville Brick and Tile Co.* v. *Industrial Com.* 305 id. 577; *Western Foundry Co.* v. *Industrial Com.* 298 id. 593.

It was not the claim of defendant in error, either in his original petition or in his evidence thereunder, that he was permanently injured and totally incapacitated for work. The arbitrator and the commission did not so find. Defendant in error testified before the arbitrator that he had

a hurting in his chest and that when he tried to lift anything he had pain in the small of his back and right chest, and that his chest and back never hurt him before he was injured.  Dr. Moore testified on the same hearing for plaintiff in error that the lumbar curve was decreased and that there was evidence of increased tenseness of the left lumbar muscle, but that he could not determine positively that the tenseness was real.  Defendant in error's evidence under his second petition shows clearly that he had a real injury to his spine and some of the muscles controlling the same, and that his injuries gradually increased according to the usual tendencies of such injuries, as testified to by Dr. Hoffmeister.  As the evidence shows that defendant in error is now permanently injured and so incapacitated for work as to be unable to earn wages, his disability has necessarily been shown to have recurred and increased, since the evidence originally showed that his disability was of a temporary character and that the arbitrator and the commission so found.  *Franklin County Mining Co.* v. *Industrial Com.* 323 Ill. 98; *Springfield District Coal Co.* v. *Industrial Com.* 303 id. 312.

We have set out substantially the entire evidence under the original and the second petitions, and we do not think it necessary to discuss this evidence further, as it was in no way rebutted.  The evidence clearly shows that defendant in error is permanently injured and that he is totally incapacitated for any manner of work in which stooping and lifting are involved.  We know of no manual labor that can be performed without stooping and lifting, and none has been suggested by plaintiff in error.

Complaint is made by plaintiff in error that the circuit court arbitrarily found the date of recurrence of the injury to be on May 17, 1924, and contends there is no basis for such a definite finding.  The real question in the case is whether or not such a recurrence since the former award was shown.  It would, doubtless, be impossible in any case

to fix definitely the exact date of such a recurrence, but the fact that such a finding was made, and the further fact that the evidence does not show precisely the date of the recurrence, is not fatal to the judgment. This record in substance shows that defendant was injured in his back by a strain, and that after he had gotten over the shock and the first soreness by reason of his injury he thought that he was recovering from his injury and so testified, and the commission found that he had recovered on the testimony of his physicians who were witnesses for plaintiff in error. Subsequent developments showed that his injuries began to increase and that they were not temporary but permanent and totally disabling, and it is immaterial at just what date after the first award the injuries began to increase.

The award is not excessive. Plaintiff in error concedes that the maximum death benefit would have been $4250, payable at the rate of $17 per week, and that that is the amount recoverable by defendant in error if permanent and total disability exists. It overlooks the fact that by order of the court the court's award was to be credited with the entire award allowed under the original petition, and that the total amount recovered by the judgment of the court is $4250, less the amount of the former award.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*