AETNA LIFE INS. CO. et al. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 4686. Decided January 7, 1929. (274 P. 139.)

*Bagley, Judd & Ray,* of Salt Lake City, for plaintiffs.

*Harvey H. Cluff,* Atty. Gen., and *A. H. Hougaard,* of Salt Lake City, for defendants.

THURMAN, C. J.

This is a proceeding to review an award for additional compensation under the provisions of the Utah Industrial Act (Comp. Laws 1917, §§ 3061-3165).

On April 9, 1924, the defendant Manuel Mileusnic, while in the employ of the plaintiff mining company, was injured as the result of an accident in the course of his employment. The mining company was an employer under the provisions of the Industrial Act, and the plaintiff insurance company carried the insurance. The nature of the injury sustained

by Mileusnic will be referred to hereinafter in connection with the findings. Mileusnic was confined in a hospital for several months, and received medical and hospital treatment which was paid for by the insurance company. He was discharged from the care of his attending physician in April, 1925, and directed to resume light work. His compensation, however, was paid by the insurance company until July 3d of the same year. Mileusnic insisted he was unable to resume work, and on July 3, 1925, he was examined before the commission by its medical advisory committee, a majority of whom were of opinion that his loss of function was 15 per cent. That finding of loss of function, under the Utah statute, entitled him to compensation for 30 weeks at $16 per week. He was afterwards examined again by the committee, and on October 31, 1925, Mr. William Knerr, chairman of the Industrial Commission, addressed the following letter to the insurance company:

"We are enclosing herewith copy of conclusions made by Doctors Pendleton, Ossman and Hosmer on examination of Mr. Mileusnic on October 16, 1925.

"The Commission feels, after taking into consideration all the circumstances in this case, that you should pay the injured employe thirty weeks compensation, as final settlement in this case.

"Trusting this will be satisfactory, to all parties concerned, we beg to remain,

"Respectfully yours."

The record discloses that a copy of the letter was mailed to Mileusnic. The offer contained in the letter was accepted by the insurance company, and the amount thereof, to wit, $480, was paid in accordance with the terms of the offer. Thereafter, in February, 1926, Mileusnic made a formal application for further compensation. Hearings on the application were afterwards had, at which all parties litigant were present. The plaintiff insurance company objected to the taking of any evidence on the grounds, in substance, that a final settlement had been made between the insur-

ance company and Mileusnic with the approval of the Industrial Commission. In other words, the settlement was set up as a complete bar to further proceedings in the cause. The commission noted the objection and proceeded to take the evidence introduced by the parties. On July 19, 1926, the commission rendered its decision to the effect that Mileusnic had sustained a loss of function of 50 per cent., and awarded him additional compensation for 70 weeks at $16 per week, to be paid in a lump sum, and attorney's fees in addition thereto. The commission also ordered that rehearing, if desired by either party, should be applied for within 20 days, and by express order retained jurisdiction of the case until the claim was settled as provided by law. Neither party applied for a rehearing. Thereafter, in June, 1927, a communication concerning the condition of Mileusnic was sent to the commission by Dr. Baldwin, whereupon Mileusnic applied to the commission to reopen the case. On July 15, 1927, the commission adopted the following resolution:

"Whereas, under date of July 19, 1926, the Industrial Commission, by its decision, ordered the Aetna Life Insurance Company and/or the Utah Apex Mining Company to pay certain sums of compensation to the applicant, Mr. Mileusnic; and

"Whereas, under date of June 30, 1927, the applicant submitted to the Industrial Commission of Utah the following communication signed by Dr. S. C. Baldwin:

" 'I have again examined Emanuel Mileusnic and have examined the X-rays recently taken.

" 'His back is still very stiff and he complains of about as much pain as ever, and whenever he sits down he always supports himself on his cane. When I stretch his back in the swing he says that it feels easier, therefore, I have advised him to do one of two things, either have an operation on the spine or to wear a plaster cast.'

"And on the same date the applicant in writing requested a formal hearing to determine the question as to whether or not he should undergo an operation or wear a plaster cast.

"Now, therefore, be it ordered and resolved that the applicant be given an opportunity to present evidence to show that since the decision rendered by the Commission on the 19th day of July, 1926, that he will require further medical attention and additional compensa-

tion payments to be made in case it is finally determined that he will require further medical treatment; and

"Be it further resolved that all parties in interest will be notified at a later date as to the time said hearing is to be had."

In pursuance of the resolution, a further hearing was had. All parties were represented. Evidence was taken and the cause submitted. Thereafter, on December 15, 1927, the commission found new developments in Mileusnic's condition since the last hearing consisting of incessant pain and his total disability to perform labor. The commission also found that his condition was such that in all probability he could be greatly relieved by further medical and surgical treatment, and that Mileusnic had consented to undergo such treatment. As conclusions of law, the commission found the insurance company should pay for such treatment and pay to Mileusnic $16 per week for total disability during such time as he continued to be totally disabled, not exceeding 100 weeks. Hospital expenses and attorney's fees were also ordered to be paid by the insurance company. It was further ordered that a rehearing, if desired, be applied for within 20 days and that the commission retain jurisdiction of the cause. Within the time specified plaintiffs applied to the commission for a rehearing of the case, which application was denied. Plaintiffs then seasonably applied to this court for a writ of review.

Plaintiffs urge the following grounds for a reversal of the award:

(1) That the settlement made with Mileusnic in response to the offer contained in the letter of Commissioner Knerr of October 31, 1925, was a final settlement of the claim and a bar to further proceedings.

(2) That there was no evidence of change in Mileusnic's condition after said settlement to invoke the jurisdiction of the commission or to authorize the exercise of its continuing jurisdiction.

Before entering upon a consideration of these contentions, we shall endeavor to state the nature and extent of

the injuries sustained by Mileusnic as a result of the accident. These are deducible, in the main, from evidence quoted by the commission rather than from conclusions drawn from the evidence. The decision of the commission on the last hearing is denominated "modified decision," and the findings connected therewith must be considered in connection with the findings made upon the former hearing. As to the nature and extent of the injuries, there is a finding on the previous hearing which reads as follows:

"That on April 9, 1924, Manuel Mileusnic, while regularly employed by the Utah Apex Mining Company, was hit on the back by falling dirt causing him to sustain severe injuries to his back, including fractures of certain vertebrae."

The commission then quotes, as a part of its findings, the following excerpt from the testimony of Dr. Holbrook, one of Mileusnic's witnesses:

"He has a rigid spine especially marked over the lower half, more particularly over the lower dorsal and upper lumbar region; almost a total loss of motion over the twelfth dorsal, first, second and third lumbar vertebrae; his movements in all directions are greatly limited, the backward bending of the spine and rotation are practically absent; force applied to augment it, his normal ability to move, seems to give him great stress; there is muscle spasm of the spine muscles over this same area. There is quite a marked weakness in the spine. Patient is almost unable to pick up any object from the floor, and cannot do it at all by bending forward; he must support himself with his hands on his thighs or bend his knees and almost sit down to reach the object. There is some weakness in both legs with patient lying or sitting; his ability to push on the legs or pull them up against force is away below normal for a man of his size. There is a prominence over the spine from the twelfth dorsal to third lumbar vertebrae, due to an enlargement of the thickening of vertabra at that point. Those are the principal things you will find upon physical examination. I have not touched anything he says, just the physical symptoms as I found them."

Next the commission quotes from the Roentgen Laboratory Report of Louis A. Thody as follows:

"There is a crushing injury in the first lumbar vertebrae displaying a typical 'jack-knife' deformity with a narrowing of the anterior dimensions and a displacement posteriorly. The articulation of the second lumbar shows some deformity with a lipping on both sides. The third and fourth lumbar also show lipping of articulations, especially on the right side.

"There has been fracture on the transverse process of the first, second and third on the left side and probably the first on the right side."

Such in general is a description of the injuries as given by the experts and as adopted by the commission as a part of its findings.

Upon these and other findings, the commission, as heretofore shown on the previous hearing, found as a conclusion of law that Mileusnic had sustained 50 per cent. loss of function and made its award accordingly.

On the last hearing the commission, after taking further testimony, supplemented the above by finding that Mileusnic had become totally disabled for the performance of manual labor by reason of the accident.

We shall determine later on whether or not these findings are sustained by the evidence.

The first question is: Is the claim of Mileusnic barred by the compromise settlement of October, 1925? In the beginning of his investigation of this question the writer regarded the question as exceedingly troublesome. At his request the attorneys for the parties made special investigation concerning this particular question and furnished supplemental briefs thereon after the oral hearing on the cause. The authorities cited and relied on by plaintiffs are as follows: *Anderson* v. *Oregon S. L. R. Co.*, 47 Utah 614, 155 P. 446; *Jenkins* v. *Texas Employers' Ins. Ass'n* (Tex. Civ. App.) 211 S. W. 349; *Nowiny Publishing Co.* v. *Industrial Commission*, 187 Wis. 30, 203 N. W. 740; *Kuhn* v. *Pennsylvania Rd. Co.*, 270 Pa. 474, 113 A. 672; *Spooner* v. *Estate of Beckwith*, 183 Mich. 323, 149 N. W. 971; *Simpson Construction* v. *Industrial Board of Illinois*, 275 Ill. 366, 114 N. E.

138; In re Stone, 66 Ind. App. 38, 117 N. E. 669; *Aetna Life Ins. Co.* v. *Shiveley,* 75 Ind. App. 620, 121 N. E. 50; *Pedlow* v. *Swartz Elec. Co.,* 68 Ind. App. 400, 120 N. E. 603; *Home Packing & Ice Co.* v. *Cahill,* 71 Ind. App. 245, 123 N. E. 415; *Powell* v. *Kansas-Missouri Terminal Co.,* 121 Kan. 622, 249 P. 675; 1 Honold on Workmen's Compensation, c. 8, p. 724; 2 Schneider on Compensation, c. 12, p. 1270.

Defendants cite the following: *United States Fidelity & Guaranty Co.* v. *State Industrial Commission,* 125 Okl. 131, 256 P. 892; *Shawnee Morning News* v. *Thomas,* 125 Okl. 155, 256 P. 937; *Franklin County Min. Co.* v. *Industrial Commission,* 323 Ill. 98, 153 N. E. 635; *Hartford Accident & Indemnity Co.* v. *Industrial Commission,* 320 Ill. 544, 151 N. E. 495; *Harrisburg Colliery Co.* v. *Industrial Commission,* 319 Ill. 291, 149 N. E. 745; *Gorenz* v. *United States Coal & Coke Co.,* 212 Ky. 344, 279 S. W. 343; *United States Casualty Co.* v. *Smith,* 162 Ga. 130, 133 S. E. 851; *Globe Indemity Co.* v. *Lankford,* 35 Ga. App. 599, 134 S. E. 357; *United States Fidelity & Guaranty Co.* v. *State Industrial Commission,* 115 Okl. 273, 244 P. 432; *Employers' Mutual Ins. Co.* v. *Industrial Commission,* 78 Colo. 501, 242 P. 988; *United States Fidelity & Casualty Co.* v. *Harrison,* 125 Okl. 90, 256 P. 752; *Southern Min. Co.* v. *Wilson,* 213 Ky. 245, 280 S. W. 961.

It is not our intention to review these authorities in detail, for the reasons that will hereinafter appear. The authorities cited by both plaintiffs and defendants, to a certain extent, support their respective contentions, ■ but it appears in most cases that they are founded on statutes which specify the conditions upon which industrial claims may be compromised or settled by the parties so as to become a bar to future proceedings. The conditions imposed are quite formal and must be strictly complied with. They all require the approval of the board charged with the duty of administering the law. The Utah statute does not provide for a settlement by agreement of the parties as do the statutes of the states referred to, and, in view of

the evident purpose of the act, it is open to serious question whether an agreement made, and settlement had in pursuance thereof, even with the consent of the commission, would be binding upon an applicant for compensation unless the compensation agreed upon and paid was all he would be entitled to under the terms of the Industrial Act. The commission is an administrative body merely. Its duty is to administer the law applicable to the case and award such compensation as the law authorizes. However, it is not necessary to decide this question in the instant case. Counsel for the respective parties have industriously collated the authorities above cited at our request, and we have cited them here for the convenience of those who hereafter may be interested in the subject.

Before leaving this question, it may be stated that, while our statute makes no provision for settling claims by agreement it does expressly provide, in Comp. Laws Utah 1917, § 3151, "No agreement by an employee to waive his rights to compensation under this title shall be valid." In *United States Fidelity & Guaranty Co.* v. *State Industrial Commission*, 125 Okl. 131, 256 P. 892, a provision of the Oklahoma statute identical with that above quoted was held by the court to render invalid a settlement made after the injury occurred. In *Jenkins* v. *Texas Employers' Ins. Ass'n* (Tex. Civ. App.) 211 S. W. 349, a provision of the Texas statute identical with that above quoted was held by the Texas Court of Civil Appeals to apply only to agreements made prior to the injury. In both Texas and Oklahoma the statutes elsewhere provide for settlement by agreement of the parties under certain conditions and restrictions. In Utah, as we have no such statute, that fact alone might have some weight in arriving at a proper interpretation of the language above quoted from the Utah statute. I am of opinion a solution of this question is not necessary in the case at bar.

In this case, as appears from the statement we have made, after settlement made in pursuance of the written

offer by Mr. Knerr, chairman of the commission, in October, 1925, Mileusnic, in February, 1926, made formal application for further compensation, claiming that he was still unable to perform manual labor. A hearing was had in April, 1926, at which time the insurance company and mining company, plaintiffs here, objected to the taking of evidence for the reason that the claim had been finally settled by agreement with the approval of the commission. The objection was noted and the evidence taken. A continuance of the hearing was had until May next following, when the taking of evidence was resumed. As the result of these hearings, the commission found 50 per cent. loss of function, which entitled Mileusnic to 100 weeks' compensation. He had already received 30 weeks' compensation under the settlement made in pursuance of the offer made by Chairman Knerr in October, 1925, as a consequence of which the commission awarded him 70 weeks' compensation and attorney's fees, as before stated. Opportunity was given for rehearing, but none was applied for. The commission also by express order retained jurisdiction of the case. The insurance company, plaintiff, acquiesced in this award and paid the compensation. By analogy to precedents in court procedure this was a waiver at least of the right to have that award reviewed. 2 R. C. L. p. 64; *Ottenheimer* v. *Mountain States Supply Co.*, 56 Utah 190, 188 P. 1117. In the Utah case at page 193 of 56 Utah (188 P. 1118), the court says: "It is elementary that in case a party to an action accepts the benefits of a judgment in his favor or acquiesces in a judgment against him he thereby waives his right to have said judgment reviewed on appeal"—citing 3 Cyc. 644 and 656, 3 C. J. 655, and 2 Ency. Pl. & Pr. 174.

It seems to us that, when the insurance company waived its right to set up the settlement as a bar against that award, such waiver should be held to apply to all subsequent proceedings. A claim for compensation under the Industrial Act is only one claim, no matter how many hear-

ings are had or how many distinct awards are made. It is a claim by the employee for compensation for the injury he has sustained, notwithstanding the compensation may be determined from time to time resulting in many distinct awards. We are of opinion that the objection that the award now under review is barred by the settlement made October 31, 1925, is without merit and should not be sustained.

This brings us to a consideration of the case on its merits. It will not be necessary to review the evidence in detail. We have set forth the nature of the injury as described by some of the witnesses. There is little conflict as to this. There is some conflict in the testimony of the physicians as to the ability of Mileusnic to perform manual labor. Mileusnic himself testified he was unable to perform such labor on account of the pain in his back. He described the effect in considerable detail, and one or more of the experts was of opinion that such pain might result from the objective symtoms. At the last hearing Mileusnic testified that he was in greater pain than he was the year before at the previous hearing. The experts generally agreed that there appeared to be no change as far as objective symptoms were concerned. That the injuries sustained by Mileusnic were of a serious nature and incapable of a perfect diagnosis as to the extent of his disability must be conceded. The conflicting testimony of the physicians themselves is a demonstration of the fact.

Plaintiffs rely mainly on the fact that the evidence showed no change in Mileusnic's condition between the first and last award. Assuming that to be true, it does not sustain plaintiff's contention that the award for that reason is invalid and should be set aside. The first award by which Mileusnic was awarded 50 per cent. loss of function, or 70 weeks' compensation in addition to the 30 weeks, paid on the settlement was not a final award. This is manifest on the record made by the commission. While it ordered that a rehearing be applied for if desired,

it expressly retained jurisdiction of the cause, thereby indicating to all parties that the award was not be to considered as final if future developments indicated that an additional award should be made conformable to law. Even if it be admitted that Mileusnic's condition had not become worse since the previous award as to his ability to perform labor, there is no evidence that his condtion in that respect had improved. There being no improvement in his condition—still physically unable to perform manual labor and acting on the advice of a reputable physician who communicated his opinion to the commission—Mileusnic again applied for further compensation. The case clearly falls within the rule announced in the case of *Continental Casualty Co.* v. *Industrial Commission,* commonly known as the Vukovich Case (Utah) 260 P. 279. In that case it was believed that the Hibbs operation which had been performed on Vukovich would effect the object desired within a certain time. Compensation was awarded for that period of time. There was substantial evidence to the effect that, when the time for which compensation had been allowed expired, Vukovich was still unable to work; he still had pain which the Hibbs operation was intended to alleviate. The commission on that showing awarded further compensation, and this court sustained the award. The case at bar, on the merits, under the evidence, is better sustained than was the award in the Vukovich Case. The procedure adopted by the commission in this case was more regular than in the Vukovich Case, for here there can be no doubt whatever that the commission did not intend its first award to be conclusive. The case was expressly left open for further proceedings should future developments render it necessary in administering the claim.

Plaintiffs in this case stress the point that, as there was no change in the physical condition of Mileusnic after the first award, there were therefore no grounds upon which to invoke the further jurisdiction of the commission. We have already shown, as we believe, that the fact that there

was no change where one was expected for the better, when the award was made, was itself sufficient to invoke the jurisdiction. This would be true even if the commission had not expressly retained jurisdiction. Vukovich Case, supra. In this connection it may be said the idea apparently prevalent among many members of the bar that there must be some change for the worse in the condition of an applicant after an award is made to authorize further proceedings by the commission in his behalf, not only finds no support in reason, but none whatever in the statute which continues the jurisdiction of the commission in each case. That statute (section 3144, Comp. Laws Utah 1917) reads:

"The powers and jurisdiction of the Commission over each case shall be continuing, and it may from time to time make such modification or change with respect to former findings or orders with respect thereto as in its opinion may be justified."

Notwithstanding the plain, unambiguous language of this statute, it is still insisted in nearly every industrial case, where the continuing jurisdiction of the commission is involved that there must be some change for the worse in the condition of an applicant after an award has been made to invoke the jurisdiction of the commission to award further compensation. The most casual glance at the statute will disclose nothing that warrants any such assumption. Neither is there anything in the opinion of this court in *Salt Lake City* v. *Industrial Commission*, 61 Utah 514, 215 P. 1047, to justify the assumption. That was the first case by this court in which was made any attempt to construe the statute in question. The following language from the opinion in that case, at page 518 of 61 Utah (215 P. 1048), has been since quoted in many cases: "It certainly was not intended by that section that the Commission might resume jurisdiction of a case that had once been regularly determined without some change or new development in the injury complained of not known to the

parties when the former award was made. It may often happen that some material change in the condition of applicant's injury may occur after an award has been made; in which justice to one or the other of the parties litigant might demand a further hearing of the cause. It might be that what was supposed to be a serious or permanent injury for which a large compensation was awarded would prove to be only slight or temporary, in which case the compensation should be substantially modified or abrogated alto-. gether; *or it might be that the injury would afterwards prove to be more serious than was supposed when the award was made, in which case the compensation should be increased.* There might be other reasons for the exercise of jurisdiction under the statute last quoted which do not at present occur to the mind of the writer, but no reason whatever appears in the instant case." (Italics supplied.)

The first sentence in the excerpt above quoted, standing alone, affords some slight justification for the contention that there must be a change or new development to invoke jurisdiction. But when the entire excerpt is read it is clear that the court did not intend to imply that in all cases there must be a change or even a new development in the applicant's condition. A liberal interpretation was given to the statute, but not more liberal than is warranted by the plain language of the statute. The statutes of many states, in conferring jurisdiction on Industrial Boards, seem to contemplate that there must be some change in the condition of the applicant to enable him to invoke further jurisdiction after an award once made. Such was the nature of the California Statute enacted in 1913 (St. 1913, p. 279). A later statute on the same subject was enacted in 1917 (St. 1917, p. 850, § 20(d), which reads as follows:

"The Commission shall have continuing jurisdiction over all its orders, decisions and awards made and entered under the provisions of sections six to thirty-one, inclusive, of this act and may at any time, upon notice, and after opportunity to be heard is given to the parties in interest, rescind, alter or amend any such order, decision or award made by it upon good cause appearing therefor, such power

including the right to review, grant or regrant, diminish, increase or terminate, within the limits prescribed by this act, any compensation awarded, upon the grounds that the disability of the person in whose favor such award was made has either recurred, increased, diminished or terminated; provided, that no award of compensation shall be rescinded, altered or amended after two hundred forty-five weeks from the date of the injury. Any order, decision or award rescinding, altering or amending a prior order, decision or award shall have the same effect as is herein provided for original orders, decisions or awards."

In *Bartlett Hayward Co.* v. *Industrial Accident Commission* (Cal.) 265 P. 195, the question was presented whether the 1917 statute enlarged the jurisdiction of the commission or whether it remained substantially the same. While the California statute is more elaborate than the Utah statute, the meaning, nevertheless, is substantially the same. If there is any difference, the California statute is more restrictive. The holding of the California court in the case above referred to, as far as relates to the question under review, is well reflected in the following headnotes prefixed to the opinion:

"2. Under Workmen's Compensation Act 1917, § 20(d), being St. 1917, p. 850, the power of the Industrial Accident Commission as to its continuing jurisdiction is not limited to consideration of changes in physical condition of workman, but is extended to right to rescind, alter, or amend orders, decisions, or awards on good cause appearing therefor."

"3. Under Workmen's Compensation Act 1917, § 20(d), being St. 1917, p. 850, relative to the Industrial Accident Commission's right to rescind, alter, or amend its orders, decisions, or awards on good cause appearing, what constitutes 'good cause' depends largely on the circumstances of each case; term being relative."

"6. Doctrine of res judicata and other common-law doctrines as incorporated in Code Civ. Proc. § 1908, et seq., may not be invoked to defeat an employee's right under the Workmen's Compensation Act. (St. 1913, p. 279, as amended.)"

The Utah statute does not expressly state that good cause must be shown after an award is once made to authorize

further jurisdiction by the commission as does the California statute, but we are of opinion, as held in the case of *Salt Lake City* v. *Industrial Commission*, supra, that good cause must be shown, especially if the previous award purports to be final. Here it was not final and not intended to be final, as already appears. But, even if it purported to be final, there is evidence in the record to justify the commission in resuming jurisdiction. When Mileusnic made his last application for further compensation, it appeared he was still unable to perform manual labor. He testified he was suffering greater pain than he suffered the year before when the first award was made. It appeared from the evidence presented to the commission that an Albee operation would in all probability relieve him from pain and suffering, which appeared to be the only serious impediment to his resuming work. It also appears from the evidence that Mileusnic, while reluctant to undergo a major operation, yet was willing to submit to it upon the assurance that it might improve his condition so that he could resume work. Mileusnic had received only 100 weeks' compensation. The statute authorizes 200 weeks, or so much thereof as is necessary.

The court is of opinion that the commission did not exceed its jurisdiction in making the award, and for that reason the award is affirmed.

CHERRY and GIDEON, JJ., concur.

HANSEN, J., concurs in the result.

STRAUP, J., dissents.