McLAREN v. INDUSTRIAL COMMISSION et al.

No. 5333. Decided January 23, 1933. (18 P. [2d] 640.)

*E. J. Skeen,* of Salt Lake City, for plaintiff.

*Joseph Chez,* Atty. Gen., and *Hamilton Gardner,* of Salt Lake City, for defendants.

STRAUP, C. J.

This case involves a review of proceedings of the Industrial Commission. McLaren as a carpenter was in the employ of the McKean Company. The Commercial Casualty Insurance Company was its insurance carrrier. Admittedly, McLaren was injured in the course of his employment on July 2, 1930, by slipping and falling twelve or thirteen feet from a ladder, and striking with his back on the ground. He was rendered unconscious and was taken home. He remained there three or four days when he was taken to the hospital. There an X-ray was taken of the sternum and ribs but not of the back or of the vertebrae. He remained at the hospital four or five days and then returned to his home and afterwards was discharged by the attending phy-

sician. The wage earned by him was $46.75 a week. The insurance carrier paid him compensation from July 2 to July 21, 1930, amounting to $34.29 and paid the medical and hospital expenses amounting to about $77. He went back to work for his employer July 22d and worked until October 18th.

On December 8, 1930, he filed an application with the commission for additional compensation. Notice of the hearing was given the company and its insurance carrier, who contested the claim. At the hearing, held January 15, 1931, evidence was given by the applicant that while engaged in his work as a carpenter he fell twelve or thirteen feet and struck the ground on his back between his shoulders and was rendered unconscious; that he had no treatment either at the hospital or at his home; that he complained of his chest and back hurting him and that he had pain in the upper part of his back, designated as the dorsal region; that he had pain all the time after he went back to work and complained about it to the man in charge of the work as well as to McKean, the manager of the company; that he was able to do light or inside work but was unable to do heavy work or any lifting because his back hurt him, but thinking he would get better he kept on working until October 18th when he was laid off; that he thereafter did some work driving a Ford truck and shoveling coal on and off the truck for a coal company for about three weeks but quit because he could not stand the work; that he worked several days aiding others in shingling the roof of a house; that the last work he did was on December 12, 1930, and did no other work because, as he testified, he was not able to do anything but light work.

A physician testified that he examined the applicant and found a great deal of tenderness around the second, third, and fourth dorsal vertebrae; that an X-ray was taken of the front lungs and ribs but not of the spine or of the vertebrae. The physician gave it as his opinion that notwithstanding the soreness and the pain suffered, the ap-

plicant was able to work, although he found evidence of altered function, that the applicant could not bend forward and had a stiffness in the joints referred to but the physician was not able to say whether there was a fracture or a spondylitis.

Another physician testified that he saw the applicant on the day of the injury and assisted in taking him home; that the applicant had difficulty in breathing, had what is called dyspnoea and complained of pain in the chest and in the lower sternal region and also in the lumbar region, which was the chief complaint; that upon his direction the applicant was taken to the hospital and an X-ray taken; that he reported the injury as "traumatic injury to the chest and back"; that he had a suspicion that there was a possible injury to the lung, and a possible injury to the sternum and to the ribs. In his report to the commission, the doctor stated that the chief complaint was "pain in sternal region and in the lumbar region of back" and that the patient "appeared to be in severe pain"; that the X-ray picture did not show a fracture of the ribs; that the picture was "not a good picture of the spinal column, so I would not say" what injury, if any, to the back was disclosed. When asked the question as to whether from his examinations the patient was able to go back to work at his trade as a carpenter, the physician answered, "I would not like to say he was or was not," and "I would not say he would not have pain"; that in his report he gave it as his opinion that the probable duration of a temporary total disability would be ten days and that he put the probable duration of temporary partial disability as being "indefinite," but thought no permanent injury or deformity would result. The physcian further testified that neither the lumbar region nor the dorsal region was X-rayed, and that the patient "complained of pain in the dorsal region and he complained of pain and stiffness" in the upper part of the back.

The applicant further testified that before the injury he was in good health and suffered no pain in the back or else-

where; that after the injury while he was working he was trying to forget his pain and hoped he would get well but finally got so bad he had to quit work.

Other evidence was given to show that after the injury the applicant was not able to move around like he did before. The manager of the company testified that when the applicant came back to work he said "he was quite stiff and I told him to take it easy"; that the applicant was doing ordinary carpenter work, was a good worker, and was reliable and trustworthy. At the hearing the applicant was not, but the company and the insurance carrier were represented by counsel.

The foregoing is a substance of the testimony adduced at such hearing. The commission found that the applicant had not sustained the burden of proving that he was entitled to compensation in addition to that theretofore paid him, and on February 5, 1931, denied him additional compensation, notice of which was given to all parties concerned. The commission further ordered that, if either party was dissatisfied with the decision and desired to be further heard or to appeal from the decision, written application for a rehearing was required to be filed with in twenty days from the mailing of notice of the decision.

In December, 1931, the applicant consulted counsel and on December 23d was examined by another physician who caused an X-ray to be taken of the spine and back, which showed a compression fracture of the eighth dorsal vertebra. Thereupon counsel for the applicant addressed a written communication to the commission, December 30, 1931, requesting a reopening of the case and for a new hearing for additional compensation, upon the ground of what was shown by the X-ray picture and upon additional evidence to be adduced in such particular. The commission replied that in view of the order made February 5, 1931, it "believed" it had no authority under the law to reopen the case and that it would serve no good purpose "to entertain your application to have your case reopened." However, on Feb-

ruary 13, 1932, a verified petition was filed "for a new hearing." Therein was recited the injury as alleged in the original petition; that compensation was paid the applicant to and including July 21, 1930; that he continued his employment with the McKean Company from July 22 to October 18, 1930, when he discontinued his employment, but during such period he suffered pain in his chest and back and that his pains later "focussed in the dorsal region of his back" and by December 8, 1931, he became totally disabled and unfit to follow his trade as a carpenter; that a hearing was had January 15, 1931, and the applicant denied additional compensation; that at such hearing there were no X-ray pictures had or taken of the spinal column or vertebrae and for that reason the physicians who testified on the former hearing were unable to express a positive opinion as to the condition of the applicant's spine, but that both physicians testified the dorsal region of the spine was sore and tender; that since the hearing, the applicant, because of extreme soreness and pain in his back, was unable to perform the usual functions required of his occupation and was totally disabled; that since the former hearing, Dr. Holbrook, who was not a witness on that hearing, had examined the applicant and had X-ray pictures taken of the dorsal region of the applicant's spine and reported "that as a result of the injury sustained July 2, 1930, the applicant sustained a compression fracture of the eighth dorsal vertebra, and by reason thereof was rendered totally disabled"; that by reason of the insufficiency of the medical examination and testimony as to the applicant's physical condition at the former hearing and because of the subsequent developments showing that the applicant was permanently and totally disabled, he prayed that, under the provisions of Comp. Laws Utah 1917, § 3144, he be allowed a new hearing for additional compensation. Attached to the petition was a written report from Dr. Holbrook, in which, among other things, he stated that he had examined the applicant and had X-ray pictures taken and found that the applicant, due to

the injury, had "sustained a compression fracture of the eighth dorsal vertebra" and that the applicant was totally disabled.

Upon the filing of the petition, the commission ordered that, "after a careful consideration of the petition the applicant should be given an opportunity to reopen his case and present testimony at a formal hearing," and that all parties in interest appear before the commission at a stated time, "to present evidence before the Commission to determine the question as to whether or not under the law it would have authority to reopen this case and award additional compensation." Notice was given accordingly and all parties by counsel appeared before the commission on March 29, 1932. The defendants objected to any further hearing upon the ground that the order of February 5, 1931, denying compensation, "closed the case and in its decision the Commission did not retain jurisdiction or hold the matter open"; that more than one year since the prior order of February 5, 1931, elapsed before the applicant by his petition applied for additional compensation, or to reopen the matter, and that "such new application is barred by the statute of limitations"; that to reopen the case would be against public policy and open the door to fraud; and that no reason was set forth in the petition for granting a new hearing "after a lapse of more than one year." The commission ruled that the matter would be taken under advisement, but that the commission would hear the evidence of the applicant and his physician, "with the distinct understanding that in case the Commission holds that we have jurisdiction under the law and that the applicant would be entitled to further relief and further compensation, then in that event the defendants will be given full opportunity to present medical evidence in rebuttal of the evidence submitted to it."

Thereupon the applicant was called as a witness and gave testimony concerning his employment and of the accident and injury substantially as given at the former hearing, his

going back to work after the injury and continuing with his work doing inside work not requiring heavy lifting, until October when he was laid off, the manager of the company saying he did not need him any more, and otherwise testified substantially as he testified at the former hearing, but more in detail concerning his injury and his inability to work; that he could raise the elbow of his left arm only slightly above the shoulder; that in lifting lumber because of his back he did not have strength to hold it; that because of his pain he was unable to sleep and could sleep only about an hour at a time, and gave further testimony showing that since the former hearing he was unable to follow his employment or to do anything but light work.

Dr. Holbrook, his physician, testified that he first examined the applicant December 23d and made a thorough examination of him, especially of his spine and "found physical evidence of spinal injuries and spinal disability" and on December 30, 1931, caused an X-ray picture to be taken of the applicant's back and that the picture disclosed a compression fracture of the eighth dorsal vertebra; that two X-ray pictures were taken, one a lateral view and both showed the same thing, a compression fracture of the vertebra. He further testified that the pictures showed that the condition was not due to an arthritis condition, but was produced by trauma and that he doubted whether any sort of treatment would relieve the condition, except to put a cast-iron pipe frame on the applicant and by arching his back forward with the idea of giving the soft parts a chance to fill in around the vertebra, and that there could not be any surgical operation to give relief. He further testified that in his opinion the injury was permanent; that the applicant could do a little "tampering around" with light work if he did not stand long at a time or did not have any lifting to do, and that he could not do occupational work where ordinary manual labor was required. He further, in response to a question from the commission, expressed the opinion that from the time of the injury there was a total

disability, except the doing of light work, and that the applicant was 60 per cent disabled for all kinds of work and that "he will not get any improvement unless he is treated"; and that such conditions usually do not yield to treatment for a period of from two and a half to three years; and that in his opinion the applicant would have been better off if he had not gone back to work when he did.

At the conclusion of this testimony both parties rested. May 7, 1932, the commission, after reciting that the matter had been submitted for decision, made, as it further recited, "findings of fact and conclusions" that on February 5, 1931, the commission denied applicant's claim for additional compensation and in such order directed that in case either party was dissatisfied with the decision and desired to be further heard or appeal, written application was required to be filed with the commission within twenty days from the date of mailing a copy of the notice of the decision and that the applicant failed to comply with such order; that on February 13, 1932, the applicant filed a petition for "a new hearing," that "the defendant insurance company asked that the applicant be not permitted to have his case reopened," for the reason that at the former hearing the applicant complained of a disability to his back resulting from the injury and that such "issue was passed on in the Commission's decision of February 5, 1931." The commission thereupon ordered that it had no authority to reopen the case and award additional compensation, and thus dismissed the petition; but further ordered, that in case any party was dissatisfied with the decision and desired to be further heard or to appeal, written application for a rehearing was required to be filed with the commission within twenty days from the date of mailing a copy of the notice of the decision.

The commission made no findings of fact as to the evidence adduced at the second hearing, nor did it make any ruling as to the sufficiency or insufficiency of the petition as to facts. It ruled the case regardless of the facts alleged in the petition or adduced by the evidence at the second

hearing, and solely on the ground that the matters alleged in the petition and adduced at the second hearing were adjudicated on the first hearing, and, inasmuch as the applicant did not apply for a rehearing within twenty days after the mailing of notice of the decision of the prior hearing, the commission, notwithstanding Comp. Laws Utah 1917, § 3144, was without jurisdiction to reopen the case and further hear it and thus dismissed the petition regardless of merits. Within twenty days thereafter and on May 26, 1932, the applicant filed with the commission a motion or application for a rehearing, which was denied June 9, 1932. Thereupon the applicant in due time was by this court granted a writ of review and in response thereto a complete record of the proceedings in the cause was certified and transmitted to this court.

The only question presented for review is that of jurisdiction. The petition for a new or further hearing and for additional compensation was filed in pursuance of Comp. Laws Utah 1917, § 3144. That section provides:

"The powers and jurisdiction of the commission over each case shall be continuing, and it may from time to time make such modification or change with respect to former findings or orders with respect thereto as in its opinion may be justified."

Thereunder the commission in prior cases, on applications for additional compensation, entertained and resumed jurisdiction, notwithstanding the application was not made or filed within twenty days after an order on a prior hearing was made granting or refusing compensation, and on such subsequent hearing granted or denied additional compensation as on the evidence made to appear on such subsequent hearing, which rulings were upheld by this court. A holding that, unless such application is made within twenty days after the original order was made, the commission is without jurisdiction, annuls the efficacy and the

very spirit of section 3144 conferring a continuing jurisdiction on the commission in each case to make a modification or change with respect to former findings or orders.

There seems to be a diversity of opinions, as shown by the decisions of this court, as to the power of the commission in the exercise of its continuing jurisdiction and reassuming jurisdiction of a case which had been regularly heard and determined where the maximum award permitted by the statute had not been made or allowed. That is to say, whether it was essential to show some changed conditions or some changed or new developments of the injury not existing or known when the former award or order was made, or whether it was sufficient merely to show that the applicant, after the original award was made, because of the injury had not recovered but continued to be disabled, or became permanently or totally disabled, or where made to appear that the award theretofore made was not adequate. It is not necessary to review all of the cases on the subject. In accordance with the first proposition and in considering section 3144, it, in the case of *Salt Lake City* v. *Industrial Commission*, 61 Utah 514, 215 P. 1047, 1048 was said:

"It certainly was not intended by that section that the Commission might resume jurisdiction of a case that had once been regularly determined without some change or new development in the injury complained of not known to the parties when the former award was made. It may often happen that some material change in the condition of applicant's injury may occur after an award has been made, in which justice to one or the other of the parties litigant might demand a further hearing of the cause. It might be that what was supposed to be a serious or permanent injury for which a large compensation was awarded would prove to be only slight or temporary, in which case the compensation should be substantially modified or abrogated altogether; or it might be that the injury would afterwards prove to be more serious than was supposed when the award was made, in which case the compensation should be increased. There might be other reasons for the exercise of jurisdiction under the statute last quoted [section 3144] which do not at present occur to the mind of the writer, but no reason whatever appears in the instant case."

In the case of *Brklaçic* v. *Industrial Commission*, 63 Utah 582, 227 P. 1036, 1038, this court, in considering section 3144, again said:

"This section was not intended to authorize the Commission to resume jurisdiction of a case that has been already determined, unless there has been some change or new development not previously known," citing *Salt Lake City* v. *Ind. Comm.*, 61 Utah 514, 215 P. 1047.

So too in the case of *Hartford Accident & Indemnity Co.* v. *Miller*, 68 Utah 71, 249 P. 249, where it was said that:

"It has been held by this court that the statute quoted [section 3144] does not authorize the commission to resume jurisdiction of a case once regularly determined, without some change or new development not known at the time of the award."

In the case of *Aetna Life Ins. Co.* v. *Industrial Commission*, 69 Utah 102, 252 P. 567, 569, in considering section 3144, it again was said that:

"The commission, as pointed out in the case last referred to [*Salt Lake City* v. *Industrial Commission*, supra], may, however, not correct mere errors of judgment and increase or reduce compensation once fixed, and, unless some change or new development in an injury is made evident, the original compensation as fixed must stand. If there is some change or new development, however, the commission may then modify or change its findings or orders so as to conform to the newly developed condition or change."

It may be well here to note the particular facts of the case last referred to. Heledakis, the employee, was by the commission upon a hearing had, awarded compensation for an injury to the knee, which award was paid by the insurance carrier. Thereafter a new application was made for additional compensation for the same injury. Several hearings were had on the application with the result that the commission denied the applicant further or additional compensation. He applied to the commission for a rehearing which was denied. Thereupon he applied to this court for a review of the proceedings. Because his application for a review was

not made within the time prescribed by the statute for a review, the writ theretofore issued was dismissed. *Heledakis* v. *Industrial Commission*, 66 Utah 608, 245 P. 334. After the proceedings were so dismissed and the order of the commission denying additional compensation affirmed, the applicant then filed a new or further application with the commission for additional compensation. The commission thereupon, so the opinion recites, made a further and independent investigation and became convinced that "the applicant was temporarily totally disabled from following his vocation or from following any remunerative employment"; that thereupon the commission took the matter up with a specialist in bone diseases to make a further examination as to the status of the applicant's injury. The specialist did so and reported to the commission the result of his examination, with the observation that it was difficult to make a positive diagnosis, and recommended hospitalization and an operation if necessary. The commission then took the matter up with the attorney for the insurance carrier. He declined to authorize anything further to be done, claiming that in view of the prior findings and orders the applicant had been fully compensated. The commission thereupon made arrangements with the specialist and with a hospital for a further operation on the applicant's knee. The specialist made a report to the commission as to the result of the operation. Thereupon and after further investigation, so the opinion recites, "the commission reassumed jurisdiction of the case, and, after a further hearing, of which all parties had notice," the commission, over the objection of the employer and of the insurance carrier on the ground of want of jurisdiction, made a substantial further and additional award in a lump sum to the time of the last hearing, and $16 a week thereafter until such time as the the attending physician, the specialist, pronounced the applicant surgically healed, and awarded a further sum of $150 for professional service of the specialist in performing the operation. Upon a review, applied for by the employer and its

insurance carrier, this court held that the commission, under section 3144, had jurisdiction to entertain the application and to grant further and additional compensation, but annulled the award on the ground that the commission in awarding the lump sum included the period for which the prior award was made and because the lump sum was not restricted to the discovery of the so-called "changed condition in applicant's injury." While the extent and character of the injury was before and considered by the commission on the hearing when the first award was made and when the second application was heard for additional compensation and denied, still when the bone specialist, after the applicant's writ for review was dismissed, examined the applicant's knee and performed an operation it was discovered that the injury was more severe and the disability greater than thought or found to be at the time the first award was made, which discovery was regarded or characterized as "a changed condition or new development," and hence it was held that the commission under its continuing jurisdiction was justified in reassuming jurisdiction and making a further and additional award for compensation. However, in that connection it there was further observed that because of section 3144, a large latitude and discretion was given the commission in making a modification or change with respect to findings and orders, and that, when the section was considered in connection with section 3149, "it is clear that the manifest intention of the Legislature was to abrogate, or, at least to curtail or modify, the rigorous rule of res adjudicata." A similar conclusion was reached in the case of *Spring Canyon Coal Co.* v. *Industrial Commission,* 60 Utah 553, 210 P. 611, where after an award on a full hearing was made for the loss of a leg, a second operation was performed and additional compensation on a second hearing granted.

This brings us to the case of *Continental Casualty Co.* v. *Industrial Commission,* 70 Utah 354, 260 P. 279, 281. There the employee, Vukovich, in the course of his employ-

ment was injured March 13, 1924. The injury consisted of a fracture of the vertebrae. The employee was given surgical and medical treatment. In July, 1924, an operation known as the Hibbs operation was performed to cause ankylosis of the vertebrae. Thereafter and in due time application was made for compensation. The only issue presented, heard, and determined was the character and extent of the injury. June 4, 1925, an award was made. On June 9th, and in due time, the applicant through his counsel, claiming that the award was inadequate, asked and was granted a rehearing. The hearing was set for July 28, 1925, and between that time and September 23, 1925, several hearings were had. The only issue tried was the extent and character of the injury and the disability of the applicant. The advisory committee of the commission consisting of three surgeons, and two other surgeons, testified that a complete ankylosis or solidification of the bone had been accomplished. Another surgeon testified that in his opinion a complete union or solidification had not resulted. As the result of that hearing, the commission on October 5, 1925, made an award for additional compensation. Not anything was recited in the order that the commission retained a continuing jurisdiction of the case. But the order had the usual recital that if any party was aggrieved or dissatisfied with the award or desired to appeal he was required to file an application for rehearing within twenty days. No such application was made. The award as so made was paid.

About six months thereafter and on April 9, 1926, a new application was filed for a further hearing, the claim being made that the applicant was entitled to further and additional compensation. A further hearing was granted ex parte and a day fixed for the hearing. The employer and insurance carrier objected to the case being reopened and, among other grounds, urged that no application for a rehearing was filed within the twenty days fixed by the commission in which an application for a rehearing could be made, and that no appeal had been taken from the prior

order. The objection was overruled and the case further heard. On that hearing the extent and nature of the injury and the disability of the applicant were again heard at large, the same surgeons testifying in the case who had testified on the prior hearing, and that from further examinations of the applicant there was a complete union and solidification of the bones, another surgeon testifying to the contrary. As the result of that hearing, the commission in April, 1926, affirmed the order of October 5, 1925, and denied additional compensation. No application was filed within twenty days for rehearing nor was there any appeal taken. However, about five months thereafter, in September, 1926, another application for a further hearing was filed for further and additional compensation. The application was granted ex parte and the hearing set for October 25, 1926, and was held November 4, 1926. The employer and the insurance carrier again objected to reopening the case or to further hear it, urging that the decision rendered October 5, 1925, was final, that the commission was without jurisdiction to enter upon a further hearing, and further urged that the commission first determine whether it had jurisdiction to proceed. The commission ruled that the case (ex parte) had been reopened by "resolution of the Commission" and that it resumed jurisdiction to further hear the case and proceeded with the hearing. The extent and character of the injury were again fully heard, five or six surgeons after further examining the applicant and from X-rays testifying as they had before, that there was an ankylosis and solidification of the vertebrae, and another that there was still not a complete union or solidification. In all of the hearings the applicant testified that he still suffered pain in the back and was unable to do heavy work or to follow his usual employment. As the result of that hearing the commission reached the conclusion that the decision of October 5, 1925, was based on the theory that the vertebrae would ankylose and solidify,, but now found that there was not a complete ankylosis or

solidification and no hope of a solidification, and that the applicant was thus entitled to additional compensation. The commission made an award accordingly.

On a review of the proceedings the award was affirmed. The principal question presented was that of jurisdiction. Among other things, this court held that the application for a new or further hearing was not for a "rehearing" coming within the twenty-day period in which the commission directed a rehearing may be applied for, but came within the provisions of section 3144 conferring a continuing jurisdiction upon the commission; that "while it appears in the findings * * * that the commission referred to the proceeding as a rehearing, the whole tenor of the proceeding indicates that it was a hearing under the statute conferring continuing jurisdiction"; and that "whatever may have been the evidence in the case, it is quite conclusive that the proceeding was had under the statute conferring continuing jurisdiction." Said the court further:

"As far as concerns actual change or development in the appearance of the injury, the expert witnesses found no change for the worse. But, as before stated, there is substantial evidence that the operation did not accomplish all that was expected."

And further that:

"If his [the applicant's] condition was such when the first award was made that he was unable to work, and his condition was the same when he made the last application, to what end was section 3144 enacted, if not to give relief in a case of this kind?"

Thus the conclusion was reached that the "Commission had jurisdiction to make the award allowing additional compensation."

In the case of *Aetna Life Insurance Co.* v. *Industrial Commission*, 73 Utah 366, 274 P. 139, 143, there were also two awards made on two separate hearings a year apart. The contention of the employer and of his insurance carrier was that the first hearing was final and no changed con-

ditions or new development being shown, the commission was without jurisdiction to entertain the second hearing for additional compensation. The contention was overruled by the commission and the second award for additional compensation made. On a review this court, among other things, observed that:

"At the last hearing Mileusnic [the employee] testified he was in greater pain than he was the year before at the previous hearing. The experts generally agreed that there appeared to be no change as far as objective symptoms were concerned. * * *

"Plaintiffs [the employer and insurance carrier] rely mainly on the fact that the evidence showed no change in Mileusnic's condition between the first and last award. Assuming that to be true, it does not sustain plaintiffs' contention that the award for that reason is invalid and should be set aside. * * * Even if it be admitted that Mileusnic's condition had not become worse since the previous award as to his ability to perform labor, there is no evidence that his condition in that respect had improved. There being no improvement in his condition—still physically unable to perform manual labor and acting on the advice of a reputable physician who communicated his opinion to the commission—Mileusnic again applied for further compensation."

## Further on, the court also stated that:

"Plaintiffs in this case stress the point that, as there was no change in the physical condition of Mileusnic after the first award, there were therefore no grounds upon which to invoke the further jurisdiction of the commission. We have already shown, as we believe, that the fact that there was no change where one was expected for the better, when the award was made, was itself sufficient to invoke the jurisdiction. This would be true even if the commission had not expressly retained jurisdiction. *Vukovich Case*, supra [*continental Casualty Co.* v. *Ind. Comm.*, 70 Utah 354, 260 P. 279]. In this connection it may be said the idea apparently prevalent among many members of the bar that there must be some change for the worse in the condition of an applicant after an award is made to authorize further proceeding by the commission in his behalf, not only finds no support in reason, but none whatever in the statute [section 3144] which continues the jurisdiction of the commission in each case. [quoting the statute].

"Notwithstanding the plain, unambiguous language of this statute, it is still insisted in nearly every industrial case, where the continu-

ing jurisdicition of the commission is involved that there must be some change for the worse in the condition of an applicant after an award has been made to invoke the jurisdiction of the commission to award further compensation. The most casual glance at the statute will disclose nothing that warrants any such assumption."

The court there further approvingly quoted from the case of *Bartlett Hayward Co.* v. *Industrial Acc. Comm.* 203 Cal. 522, 265 P. 195, among other things, that the

"doctrine of res judicata and other common-law doctrines as incorporated in Code Civ. Proc. § 1908, et seq., may not be invoked to defeat an employee's right under the Workmen's Compensation Act."

The court further observed that,

"when Mileusnic made his last application for further compensation, it appeared he was still unable to perform manual labor. He testified he was suffering greater pain than he suffered the year before when the first award was made."

The conclusion thus was reached that the commission did not exceed its jurisdiction in making a second award for additional compensation. The award was therefore affirmed.

In the case of *Carter* v. *Industrial Commission,* 76 Utah 520, 290 P. 776, 780, we had occasion to review, among others, the cases hereinabove referred to. With respect to the cases prior to 69 Utah we observed that:

"Such cases proceed on the theory that where a rehearing was applied for and denied, or granted, and on a rehearing the original order was adhered to or reaffirmed, the jurisdiction of the commission to grant further rehearings cease and that the commission was without authority to grant further hearings under section 3144, conferring a continuing jurisdiction on the commission, except on averments and a showing of a changed condition or new developments not previously known."

With respect to the subsequent cases, the *Continental Casualty Co.* v. *Ind. Comm.,* supra, known as the Vukovich Case, the *Aetna Life Ins. Co.* v. *Ind. Comm.,* supra, known

as the Heledakis Case, and the second appeal in the case of *Aetna Life Ins. Co.* v. *Ind. Comm.*, supra, known as the Mileusnic Case, we observed that such cases proceeded:

"On the theory that where an award is made and though applications on behalf of the employee for a rehearing or further hearings for additional compensation have been denied, yet, if it thereafter is made to appear to the satisfaction of the commission that the award as made was inadequate, or that the disability of the employee on account of his injury continued, the commission under section 3144 is authorized to grant and hear further hearings and make additional awards of compensation, not only on the theory of changed conditions or new developments arising subsequent to the making of the original award, but also if made to appear that the prior award was inadequate or the disability of the employee continued after the period for which the original award was made, and that the doctrine of res adjudicata has no application to industrial cases. There were dissents to each of the last three cited cases. They were unavailing then and must be considered unavailing now."

Thereafter in the case of *Utah Apex Mining Co.* v. *Industrial Commission* (Butler Case), 77 Utah 542, 298 P. 381, 382, in again considering section 3144, this court said:

"It will be observed that the law just quoted [section 3144] does not limit the time that the commission shall retain continuing jurisdiction to one year, or at all.

"If effect be given to the language of section 3144 we can see no escape from the conclusion that Butler's claim for additional compensation was not barred because he was not paid compensation for a period of slightly more than one year. It not infrequently happens that the injuries received by an employee are such that the nature and extent thereof cannot be ascertained without the lapse of considerable time. If the commission be required to determine the amount of compensation that shall be paid before the extent of the injury becomes certain and fixed, the employee may receive more or he may receive less than he is justly entitled to under the Industrial or Workmen's Compensation Act. It was evidently to lessen or avoid the probability of such injustice that the provision granting the comcomission continuing jurisdiction was enacted. In this case Dr. Critchlow believed that Butler's condition would be improved if he would go to work. Butler was anxious to work rather than try to eke out an existence on the amount of compensation awarded to him. Under such circumstances we can conceive of no legal reason why he

should be deprived of further compensation in the event that after a fair trial he found that he was unable to work."

It will be noticed that in some of the cases the order on prior hearings contained recitals that the commission retained or kept jurisdiction of the case, while in other cases, and as was the case in the Vukovich Case, no such recital was contained in the prior order or orders. Such a recital was not here contained in the prior order and for that reason, among other contentions, it is contended by the defendants that the commission was not authorized to reassume jurisdiction and entertain the second application filed for additional compensation. But in the case of *Aetna Life Insurance Company* v. *Industrial Commission*, supra, and in the case of *Continental Casualty Company* v. *Industrial Commission*, supra, it was held that the exercise of the continuing jurisdiction of the commission was not dependent upon such a recital. And to that effect too is the case of *Carter* v. *Industrial Commission*, supra. Apparently in the later cases it was considered that it was the statute, the law, which conferred a continuing jurisdiction on the commission and not recitals by the commission in its orders retaining or divesting itself of jurisdiction as it might will or choose to do.

Thus how stands the case in hand? As is seen, the case by the commission was ruled upon the ground that the commission was without jurisdiction to entertain the second application or to further hear the case. That was put on two grounds: First, that the application was not filed within twenty days after notice was given of the first hearing denying additional compensation; and, second, that what was presented by the evidence heard on the petition for a new or further hearing was adjudicated on the first hearing. The first ground runs counter to about all of the cases, not only those (*Continental Casualty Co.* v. *Ind. Comm.*, supra; *Aetna Life Ins. Co.* v. *Ind. Comm.*, supra; and *Utah Apex Mining Co.* v. *Ind. Comm.*, supra), of a continuing disability, but also those (*Salt Lake City* v. *Ind. Comm.*, supra;

*Brklacic* v. *Ind. Comm.,* supra; *Hartford Acc. & Ind. Co.* v. *Miller, Ind. Comm.,* supra, and others) where it was held that some change or new development not previously known was required to be shown; for, it is apparent that if the second application was required to be made within the twenty days and no application made within that time, the commission would be without jurisdiction to entertain an application to further hear the cause for any "change or new development" arising or discovered thereafter, or for any disability continuing after the twenty days had expired. It is clear that the commission may not by such recitals and in such manner limit or restrict or divest itself of or decline a continuing jurisdiction conferred upon it by the statute over each case to modify or change former findings or orders. Further, what was said in the Vukovich Case may here be said that the application for a new or further hearing was not for "a rehearing" falling within the twenty-day period within which the commission directed a "rehearing" may be applied for, but was within and in pursuance of section 3144 conferring a continuing jurisdiction upon the commission and was so stated in the petition filed for a new hearing.

Now as to the second ground, that of res adjudicata, that the matters presented by the petition or shown by the evidence were adjudicated at the prior hearing. Such a ruling may not be sustained without overruling the Vukovich Case. There the applicant, due to the injury, had a broken back. That was not disputed. The only issue there tried was as to the result of the Hibbs operation. It was tried four times. The application for the third hearing was filed about six months after the determination of the second, and the fourth application about five months after the determination of the third hearing. On each of the four hearings the issue was as to whether an ankylosis or solidification of the bones of the vertebrae had been accomplished. Each time the issue was tried at large and on the same kind of evidence and by the testimony of the same witnesses.

The ruling of the commission on the ground of former adjudication is also counter to the Heledakis Case, the Mileusnic Case, and the Butler Case. And then let the language of this court in the Heledakis Case again be noticed that "It is clear that the manifest intention of the Legislature was to abrogate, or, at least, curtail or modify, the rigorous rule of res adjudicata." Still more sweeping is the holding of the California court quoted by this court seemingly with approval in the Mileusnic Case.

But further as to this. So far as disclosed by the findings and the order of the first hearing it is not made to appear that the pertinent matter presented by the second petition was on the former hearing determined. While the evidence on the former hearing shows that the applicant complained of pain in his back and the physicians testified that in the dorsal or lumbar region there was a tenderness and soreness, still they testified that because they had no X-ray of the vertebrae or spine they were unable to say whether there was or was not an injury to or fracture of the vertebrae or spine. So at the time of the first hearing the commission did not know whether there was or was not any such injury. But the applicant after the injury, as he averred and testified, continued to suffer pain in the back and was unable to do anything but light work and ten or eleven months after the hearing and being further examined and X-rays taken of the vertebrae, a compression fracture of the vertebra was "discovered" and that he became and was totally disabled, and so did his physician testify. In such particular the case is quite similar to the Heledakis Case where, on the first and second hearings, the real condition of the knee was not "discovered," and not until the examination thereafter of the knee by the specialist and an operation performed. If such discovery may be regarded a "new development," as it was by this court characterized, so should the "discovery" here of the compression fracture of the vertebra after the first hearing likewise be characterized as a "new development" thus bringing the case within the prior decisions of

this court. But in addition thereto it further was averred and testified to by the applicant and by his physician that because of the injury and of the compression fracture the applicant had not recovered but became totally disabled from following his usual or similar employment or to do anything but light work, and that in the opinion of the physician the disability and injury were permanent, all of which were averred in the petition for a new or further hearing, thus bringing the case within the later decisions of this court.

We thus are of the opinion that sufficient was alleged in the petition to invoke the continuing jurisdiction of the commission for a further hearing; that notice was required to be given, as was here done, of the filing of the petition; that in such case upon the appearance of defendants in a cause and assailing the sufficiency of the petition as to facts, which here was not done, except challenging the jurisdiction of the commission because the petition was not filed in time and that the matters presented were therefore adjudicated, the commission is required to first consider and determine whatever objections are made to the filing of the petition before hearing the merits presented by it, which here was not done; that the ruling ought to have been that the petition was sufficient and that the objection lodged against it ought to have been overruled and the case on the petition further heard on merits, which was not done, except a hearing merely to determine jurisdiction; that on the evidence adduced, which if not controverted, entitled the applicant to further and additional compensation, but the commission did not dispose of the petition nor of the facts therein alleged on the merits, nor make any findings with respect thereto; it merely dismissed the petition and disposed of the case for want of jurisdiction without considering or determining the merits presented by the petition.

Thus, for the reasons stated, the order made in the premises by the commission dismissing the petition is annulled and vacated and the case remanded with directions to re-

instate the petition and to further proceed in accordance with the views herein expressed. The plaintiff is given costs to be taxed in the cause before the commission.

ELIAS HANSEN, FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.